REGAN, Judge.
The plaintiff, Dr. David W. Aiken, filed this suit against the defendant, Miss Bivion Kimbrell, endeavoring to recover the sum of $425.00 representing his fee for professional services rendered to this patient which consisted of consultation and surgery performed upon her during the months of March and April of 1964.
The defendant answered and admitted the rendition of the foregoing professional services; however, she asserted therein that the plaintiff had violated her express instructions relative to postoperative medication which militated against her recovery from surgery.
The defendant then reconvened in an endeavor to recover the sum of $21,000.00' representing damages which she insists-were incurred when the plaintiff failed to honor their agreement with respect to-postoperative medication and that the drugs which he prescribed in violation thereof retarded her recovery and possessed drastic-side effects which caused intense suffering; and that this treatment was not in conformity with the standards established by the medical profession.
The plaintiff in answer to the reconven-tional demand pleaded the prescription of one year, which the trial judge apparently referred to the merits; he then denied the-existence of any agreement with the defendant with respect to postoperative medication and likewise denied all of the accusations asserted in reconvention.
After a trial on the merits, the lower court rendered judgment in favor of the plaintiff in the amount of $425.00 and dismissed Miss Kimbrell’s reconventional demand. From that judgment, the defendant has prosecuted this appeal.
The record discloses that initially the-defendant had been confined in the Baptist Hospital in the City of New Orleans for treatment of infectious hepatitis under the-care of Dr. Carl Dicharry from October 31, 1963, to March 13, 1964; during this-period of hospitalization, she complained' of severe and persistent abdominal pains,, the cause of which was unknown. In the-course of this illness, she had been taking demerol, a narcotic drug, to alleviate these pains.
Dr. Dicharry was unable to make a definitive diagnosis relative to the cause of the defendant’s abdominal pain, and consequently called into consultation two surgeons, Dr. Walter Backer and Dr. Howard' Mahorner, and a gynecologist, Dr. Jason-Collins. The question of an exploratory abdominal operation was posed for their consideration and it eventually became the focal point of discussion between Dr. Dicharry and the defendant. It was finally *283 resolved affirmatively and they selected the plaintiff herein, Dr. Aiken, to perform the ■ ■exploratory surgery which occurred in the Baptist Hospital on or about April IS, 1964.
The defendant explains that because of her long history of pain, she was apprehensive of postoperative treatment. Con■sequently, she asserted in her pleadings, which forms the focal point of this case, •that she had obtained from Dr. Aiken an -agreement, which he violated, to administer •only morphine and dramamine to her post-■operatively, and that the medication which was actually prescribed, such as ■tranquilizers and Darvon, together with "the treatment rendered to her, was not in conformity with the standards of the medi-cal profession.
The record with respect to the foregoing -assertion reveals that the defendant contradicted her pleadings on the trial hereof -and testified that no agreement was entered into with Dr. Aiken relative to the administration of morphine and dramamine to her postoperatively. To the contrary, she said that it was agreed that Dr. Aiken would not administer a drug designated as ■compazine. The evidence adduced herein •clearly discloses that compazine was never prescribed for the defendant. Therefore, her claim for damages resulting from the plaintiff’s having exceeded the limitations of her consent with respect to specific post•operative medication is absolutely without merit.
We feel compelled to remark at this point ■of our opinion that we were completely fascinated by the novel-like tenor of this record. The trial judge, apparently in an •effort to afford the defendant the benefit ■of every doubt and an unimpeded opportunity to prove her case with that certainty which the law requires, in most instances liberally relaxed the rules of evidence; therefore, much of the testimony, insofar as the defendant’s aspect of the case is concerned, is predicated upon hearsay, inferences, innuendo, and presumptions of fact. This, of course, while interesting, simply increased our task of endeavoring to separate what wheat there was from an abundance of chaff.
In any event, an assiduous analysis of the record discloses that not a tinge of fault may be attached to the professional services or postoperative medication and treatment rendered by the plaintiff to the defendant; he adhered tenaciously to all of the tenets of the “Hippocratic Oath” which, of course, is the foundation of the medical mores.
The evidence adduced by both the plaintiff and the defendant, which is most unusual, to say the least, overwhelmingly preponderates to the effect that the plaintiff extended himself in every conceivable manner to afford the defendant advantages and some privileges not customarily offered to lay patients, since she was a registered nurse and the Executive Director of the Visiting Nurses Association of Greater New Orleans.
On the other hand, the whole tenor of the record leads us to the inevitable conclusion that the defendant’s complaints were quite arbitrary, capricious, crotchety, and unreasonable, and possessed absolutely no basis whatsoever in medical fact. We have refrained, since no useful purpose would be served thereby, from elucidating upon the foregoing characteristics.
We discovered a letter in this record which could very well be designated metaphorically, as the ratio decidendi of this case. It was written by Miss Kimbrell, the defendant, to the plaintiff, Dr. Aiken, and it is dated June 22, 1964, which was two days after she was discharged from the Baptist Hospital. She said among other things:
“Dear Dr. Aiken:
I appreciate your calling me Thursday night, and thanks again for all that you did for me during my last hospitalization. * * *
Sincerely,
Bivion L. Kimbrell”
*284 Counsel for Dr. Aiken facetiously, but correctly, catergorized this case in the course of oral argument before this court when he said that it represents a classic example of a cardinal principle incorporated in our legal system that “any person may sue any other person for anything.”
For the foregoing reasons, the judgment of the lower court is hereby affirmed.
The defendant is to pay all costs incurred herein.
Affirmed.